**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 19-18459 MER |
| FRICTIONLESS WORLD, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

---

**APPLICATION TO EMPLOY THREE TWENTY-ONE CAPITAL PARTNERS, LLC AS INVESTMENT BANKER FOR DEBTOR**

---

Debtor-in-Possession Frictionless World, LLC, by and through its undersigned counsel, hereby submits this *Application to Employ Three Twenty-One Capital Partners, LLC as Investment Banker for Debtor* (the "Application"), and in support thereof states as follows:

**Jurisdiction and Venue**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the automatic references of all bankruptcy cases to this Court pursuant to Rule 83.3 of the Local Rules of Practice of the United States District Court for the District of Colorado – Civil.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

3. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are 11 U.S.C. §§ 327(a) and 328(a). Fed.R.Bankr.P. 2014(a), and Local Rules 2014-1 and 2016-1.

**Background**

5. Frictionless World, LLC ("FW") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on September 30, 2019 (the "Petition Date") and is operating its business as a debtor-in-possession under 11 U.S.C. §§ 1107(a) and 1108.

6.      FW was formed in 2012 to manufacture and distribute patented professional-grade outdoor equipment for agricultural, household, and recreational use.  FW's brands include Dirty Hand Tools, RanchEx, Redback, Trophy Strike, and Vinsetta Tools.  FW owns the patents for its products and its products were historically sold by major retailers such as Home Depot, Lowes, Menards, Mid-States and Tractor Supply Co.

7.      Changzhou Inter Universal Machine & Equipment CO., LTD ("CIU") is a Chinese company that from 2012 until April 29, 2019, supplied FW with parts and products.

8.      FW's bankruptcy filing was caused by CIU's deliberate breach of more than 250 purchase orders submitted by FW through the pass-through entity Frictionless, LLC in the spring of 2019.  CIU's actions were made in concert with its owner Li Zhixiang ("Li"), its related entity Changzhou Zhong Lian Investment Co. Ltd. ("ZL Investments"), Li's son and the majority owner of ZL Investments, Frank Li, and one or more of Li's children, in furtherance of a scheme hatched in late 2018 to eliminate FW and thereby appropriate profits and market share for themselves at FW's expense.  The scheme culminated in the purchase order breach which itself came on the heels of an arbitration proceeding commenced by ZL Investments against FW and its CEO and owner Daniel Banjo.

9.      CIU's breach occurred exactly at the beginning of the 2019 season when FW customers were expecting shipments.  It followed months of written representations to FW that products were being manufactured and shipments were coming, and that all POs would be honored.  Further, it followed FW providing accelerated payments of over $4.5 million to CIU in direct reliance on CIU's representations, in order to assist in CIU's alleged manufacturing.

10.     CIU's deliberate breach had a domino effect on FW's operations in 2019.  FW scrambled to find alternative manufacturers to supply products and parts and, although having

some success doing so, the delays attendant to obtaining product from the ground up resulted in FW's inability to fulfill orders from the major retailers with whom it did business on a regular basis, including Lowe's and Home Depot, among others.  The failure to fulfill such orders, in turn, led to those retailers' termination of their agreements with FW due to its inability to deliver product, thereby creating a spiral that ultimately resulted in the chapter 11 filing.

11.     FW intends to utilize the chapter 11 process to (a) maximize and preserve the value of its assets; (b) liquidate and/or reorganize its business, or some combination thereof; and (c) pursue litigation against CIU, Li and others to enjoin their breach of non-compete agreements and patent infringement, recover damages and object to claims.

12.     Bankruptcy protection will enable FW to maximize the value of its assets, either as a going concern in whole or in part, or through an orderly liquidation by allowing FW to maintain customer and other business relationships, provide a platform for a competitive sale process, and provide a path for recovery from the predatory actions of CIU, Li and his affiliates.

## Summary of Relief Requested

13.     By this Application, FW seeks entry of an order (a) authorizing the employment of Three Twenty-One Capital Partners, LLC ("3-21") as investment banker for FW in accordance with the terms and conditions of the Agreement between Frictionless, LLC and Three Twenty-One Capital Partners, LLC (the "Engagement Agreement") attached hereto as **Exhibit 1**, effective *nunc pro tunc* to September 30, 2019; (b) approving the terms of 3-21's employment, including the proposed compensation arrangements set forth in the Engagement Agreement pursuant to 11 U.S.C. § 328(a); (c) modifying the time keeping requirements of Local Rule 2016-1(a), the U.S. Trustee Guidelines and any other applicable procedures and orders of the Court in connection with 3-21's proposed engagement; and (c) granting related relief.

**3-21's Qualification**

14.     3-21 is an investment banking firm with its principal office located at 5950 Symphony Woods Road, Suite 200, Columbia, Maryland 21044.

15.     3-21 specializes in the lower-middle market and provides a broad range of corporate advice to its clients including: (a) business sale advisory services; (b) restructuring advisory services; and (c) sell-side mergers, acquisitions, and divestitures.  3-21 and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases.

16.     FW selected 3-21 as its investment banker based upon, among other things:  (a) FW's need to retain a skilled investment banker to provide advice with respect to FW's restructuring; and (b) 3-21's extensive experience and excellent reputation in providing investment banking services for lower-middle market companies such as FW.

17.     3-21's resources, capabilities, and experience in advising FW is crucial to FW's successful restructuring.  An experienced investment banker such as 3-21 fulfills a critical need that complements the services provided by FW's other restructuring professionals.  For these reasons, FW requires the services of a capable and experienced investment banker such as 3-21.

18.     3-21 has been advising FW on strategic and restructuring initiatives for approximately one month.  Since its engagement in September 2019, 3-21 has provided the following services in connection with FW's restructuring efforts:  (a) assisting management in conducting meetings and negotiations with the various stakeholders; (b) facilitating diligence for interested parties, including potential purchasers and financing sources; and (c) providing additional investment banking services in connection with FW's chapter 11 case.

19.     As a result of its work with FW, 3-21 has developed familiarity with FW's business, financial affairs, operations, capital structure, and other material information.  Having worked with FW's management and their other advisors, 3-21 has developed relevant experience and expertise regarding FW that will assist it in providing effective and efficient services in this chapter 11 case. Accordingly, FW believes 3-21 is well-qualified to represent it in a cost-effective, efficient, and timely manner, and FW submits that the employment of 3-21 is in the best interests of FW, its creditors, and all parties in interest.

### Services to be Provided

20.     Subject to further order of the Court, and consistent with the terms of the Engagement Agreement, in consideration for the compensation contemplated therein, 3-21's anticipated services include the following:[1]

    a.    assist FW in reviewing and analyzing FW's results of operations, financial condition and business plan;

    b.    assist FW in reviewing and analyzing a potential Transaction;

    c.    provide to FW valuation services and testimony in connection with this chapter 11 case;

    d.    assist FW in negotiating a Transaction;

    e.    advise FW on the terms of securities it offers in any potential Transaction;

    f.    prepare, with FW's assistance, FW's marketing materials for a potential Transaction (the "Marketing Materials");

    g.    identify and contact, with FW's assistance, potential acquirers or purchasers that 3-

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Engagement Agreement.

21 and FW agree are appropriate, and meet with and provide them with the Marketing Materials and such additional information about FW's assets, properties or businesses that is acceptable to FW, subject to customary business confidentiality agreements; and

h.    provide such other investment banking services in connection with a Transaction as 3-21 and FW may mutually agree upon.

## Professional Compensation

21.    3-21's decision to advise and assist FW in connection with this chapter 11 case is subject to its ability to be retained in accordance with the terms of the Engagement Agreement pursuant to 11 U.S.C. § 328(a), and not § 330.

22.    As set forth more fully in the Engagement Agreement, and subject thereto, 3-21will be compensated as follows (the "Fee Structure"):

a.    monthly retainer in the amount of $15,000[2];

b.    out-of-pocket expenses budgeted for $15,000 for marketing costs *only*.  Transaction services, database services, printing, mailing, and travel-related expenses will be periodically invoiced to FW; and

c.    success fee of four percent (4%) of the transaction value of the stalking horse bid or, if no stalking horse bid, the opening bid at auction (the "Initial Transaction Value"), plus six percent (6%) of every dollar above the Initial Transaction Value.

23.    3-21 intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with this chapter 11 case, subject to the Court's

---

[2]    The $15,000 monthly "retainer" is nomenclature specific to the investment banking industry and is not akin to an attorney's retainer.  The $15,000 monthly "retainer" is actually a fee.

approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines and any other applicable procedures and orders of the Court, including any order approving this Application (to the extent compliance is not waived) and consistent with the proposed compensation set forth in the Engagement Agreement.

24.     3-21 will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in this chapter 11 case.  However, because (a) it is not the general practice of investment banking firms such as 3-21 to keep detailed time records similar to those customarily kept by attorneys; (b) 3-21 does not ordinarily keep time records on a "project category" basis; and (c) 3-21's compensation is based on a fixed monthly fee and fixed transaction fees, FW respectfully requests that only 3-21's restructuring professionals be required to maintain records in summary format containing reasonably detailed descriptions of those services provided to FW.  Moreover, FW respectfully requests that 3-21's restructuring professionals not be required to keep time records on a "project category" basis, that its professionals not be required to maintain any time records, and that it not be required to provide or conform to any schedule of hourly rates.  To the extent that 3-21 would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines or other applicable procedures and orders of the Court, FW respectfully request that this Court waive such requirements.

25.     FW believes the Fee Structure is consistent with, and typical of, compensation arrangements entered into by 3-21 and other comparable firms in connection with the rendering of similar services under similar circumstances, both in and out of bankruptcy proceedings.  FW also believes that the Fee Structure reflects a balance between a fixed, monthly fee, and a contingency amount, which is tied to the consummation and closing of the transactions and services

contemplated by FW and 3-21 in the Engagement Agreement.  In determining the Fee Structure and the reasonableness of such compensation, FW compared 3-21' fee proposal to comparable precedents.  After such comparison, followed by discussions and arm's-length negotiations, FW believes that the Fee Structure is in fact reasonable, market-based and designed to compensate 3-21 fairly for its work.

### 3-21's Disinterestedness

26.     3-21 has reviewed the list of parties in interest provided by FW.  To the best of the 3-21's knowledge, information, and belief, and except to the extent disclosed herein and in the Declaration of Ervin M. Terwilliger attached hereto as **Exhibit 2**, 3-21 (a) is a "disinterested person" within the meaning of 11 U.S.C. § 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest materially adverse to the FW or its estate; and (c) has no connection to FW, its creditors, or related parties herein except as disclosed in the Declaration of Ervin M. Terwilliger.

27.     3-21 will not share any compensation to be paid by FW, in connection with services to be performed after the Petition Date, with any other person, other than principals and employees of 3-21, to the extent required by 11 U.S.C. § 504.

### Basis for Relief

**A.     FW Should be Permitted to Employ 3-21 on the Terms and Conditions in the Engagement Agreement Pursuant to 11 U.S.C. §§ 327 and 328.**

28.     FW seeks approval of the retention and employment of 3-21 pursuant to 11 U.S.C. §§ 327(a), 328(a) and 1107(b).  Section 328(a) provides, in relevant part, that a debtor in possession, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).  Section 327(a), in turn, authorizes a debtor in possession to employ

professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). Section 1107(b) provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

29.     Section 328 permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions. As the U.S. Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Securities Corp. v. National Gypsum Co. (In re National Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d at 862 (footnote omitted).

30.     The Court's approval of FW's employment of 3-21 in accordance with the terms and conditions of the Engagement Agreement is warranted. First, as discussed above and in the Declaration of Ervin M. Terwilliger, 3-21 does not hold or represent an interest adverse to the estate and satisfies the disinterestedness standard in § 327(a).[3] 3-21 has extensive experience and

---

[3]     Bankruptcy Rule 2014(a) requires that an application must be made for retention of professionals pursuant to § 327. Under Bankruptcy Rule 2014(a), such application shall: "state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Additionally, the application "shall be accompanied by a verified statement of the person to be employed setting

an excellent reputation in providing high-quality investment banking services to debtors and creditors in bankruptcy reorganizations, mergers and acquisitions, and other restructurings. 3-21 has become familiar with FW's business operations, capital structure, financing documents, and other material information and is able to assist FW in its restructuring efforts. FW believes that 3-21 is well qualified to provide its services to FW in a cost-effective, efficient and timely manner.

31.     In addition, FW believes that the Fee Structure is market-based, fair, and reasonable under the standards set forth in § 328(a). The Fee Structure reflects 3-21's commitment to the variable level of time and effort necessary to perform the services set forth in the Engagement Agreement, 3-21's particular expertise, and the market prices for 3-21's services for engagements of this nature both out of court and in a chapter 11 context. Indeed, FW believes that the Fee Structure appropriately reflects:  (a) the nature and scope of services to be provided by 3-21; (b) 3-21's substantial experience with respect to investment banking services; and (c) the fee structures typically utilized by 3-21 and other leading investment bankers who do not bill their clients on an hourly basis.

32.     As set forth above, and notwithstanding approval of the Engagement Agreement under § 328, 3-21 intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines and any other applicable procedures and orders of the Court, with certain limited modifications.

---

forth the person's connections" to the parties in interest listed above. *See* Fed. R. Bankr. P. 2014. Here, Rule 2014 is satisfied by the contents of this Declaration of Ervin M. Terwilliger attached hereto.

33.     FW requests that the requirements of Local Rule 2016-1(a) be tailored to appropriately reflect 3-21's engagement and its compensation structure.  3-21 has requested, pursuant to § 328(a), payment of its fees on a fixed-rate and/or fixed-percentage basis. Additionally, it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys.  As discussed above, however, 3-21's restructuring personnel will maintain records in summary format containing reasonably detailed descriptions of those services provided to FW.  Apart from the time recording practices described above, however, 3-21's restructuring personnel do not maintain their time records on a "project category" basis.  As such, FW requests modification of the requirements pursuant to Local Rule 2016-1(a).

34.     Courts in other jurisdictions have approved relief similar to the relief requested in this Application.  *See e.g.*, *In re ITR Concession Company LLC*, No. 14-34284 (PSH) (Bankr. N.D. Ill. Oct. 28, 2014); *In re Revel AC, Inc.*, No. 13-16253 (JHW) (Bankr. D.N.J. Apr. 17, 2013).

**B.     The Employment of 3-21 is Critical to FW's Success.**

35.     FW submits that the retention of 3-21 is in the best interests of all parties in interest in this chapter 11 case.  3-21 is a preeminent investment banking firm that has already familiarized itself with FW's business.  Denial of the relief requested herein will deprive FW of the assistance of uniquely qualified professionals who have served them for the last month.  As discussed above, based on services performed to date and its expertise in advising other lower-middle market companies in financial distress, 3-21 has been, and will be, integral to assisting FW in this chapter 11 case.

36.     Based on the foregoing, FW submits that it has satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to support entry of an order

authorizing FW to retain and employ 3-21 on the terms described herein and in the Engagement Agreement.

37.     FW requests that the order approving this Application be granted *nunc pro tunc* to October 1, 2019.

WHEREFORE, FW requests that this Court enter an order authorizing the employment of 3-21 on the terms set forth above, modifying the provisions of Local Rule 2016(1)(a) as they apply to 3-21, and for such other and further relief as the Court deems appropriate.

DATED this 1st day of October, 2019.

Respectfully submitted,

WADSWORTH GARBER WARNER CONRARDY, P.C.

*/s/Aaron J. Conrardy*
David V. Wadsworth, #32066
David J. Warner, #38708
Aaron J. Conrardy, #40030
2580 West Main Street, Suite 200
Littleton, Colorado 80120
303-296-1999 / 303-296-7600 FAX
dwadsworth@wgwc-law.com
dwarner@wgwc-law.com
aconrardy@wgwc-law.com
*Attorneys for Frictionless World, LLC*