**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: | ) |
| | ) |
| FRICTIONLESS WORLD, LLC, | ) Case No. 19-18459 MER |
| | ) Chapter 11 |
| Debtor. | ) |

**MOTION TO EMPLOY THOMAS P. HOWARD, LLC
AS SPECIAL COUNSEL**

Frictionless World, LLC ("FW"), debtor-in-possession herein, by and through undersigned counsel, respectfully applies to this Court for an Order approving the employment of the law firm of Thomas P. Howard, LLC ("TPH Firm") as special counsel pursuant to 11 U.S.C. § 327(e), and in support thereof states as follows:

JURISDICTION AND VENUE

1. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

BACKGROUND

2. FW filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on October 1, 2019 (the "Petition Date") and is operating its business as a debtor-in-possession under 11 U.S.C. §§ 1107(a) and 1108.

3. FW was formed in 2012 to manufacture and distribute patented professional-grade outdoor equipment for agricultural, household, and recreational use. FW's brands include Dirty Hand Tools, RanchEx, Redback, Trophy Strike, and Vinsetta Tools. FW owns the patents for its products and its products were historically sold by major retailers such as Home Depot, Lowes, Menards, Mid-States and Tractor Supply Co.

4. Changzhou Inter Universal Machine & Equipment CO., LTD ("CIU") is a Chinese company that from 2012 until April 29, 2019, supplied FW with parts and products.

5. FW's bankruptcy filing was caused by CIU's deliberate breach of more than 250 purchase orders submitted by FW through the pass-through entity Frictionless, LLC in the spring of 2019. CIU's actions were made in concert with its owner Li Zhixiang ("Li"), its related entity Changzhou Zhong Lian Investment Co. Ltd. ("ZL Investments"), Li's son and the majority owner of ZL Investments, Frank Li, and one or more of Li's children, in furtherance of a scheme hatched in late 2018 to eliminate FW and thereby appropriate profits and market share for

themselves at FW's expense. The scheme culminated in the purchase order breach which itself came on the heels of an arbitration proceeding commenced by ZL Investments against FW and its CEO and owner Daniel Banjo ("Banjo").

6. CIU's breach occurred exactly at the beginning of the 2019 season when FW customers were expecting shipments. It followed months of written representations to FW that products were being manufactured and shipments were coming, and that all POs would be honored. Further, it followed FW providing accelerated payments of over $4.5 million to CIU in direct reliance on CIU's representations, in order to assist in CIU's alleged manufacturing.

7. CIU's deliberate breach had a domino effect on FW's operations in 2019. FW scrambled to find alternative manufacturers to supply products and parts and, although having some success doing so, the delays attendant to obtaining product from the ground up resulted in FW's inability to fulfill orders from the major retailers with whom it did business on a regular basis, including Lowe's and Home Depot, among others. The failure to fulfill such orders, in turn, led to those retailers' termination of their agreements with FW due to its inability to deliver product, thereby creating a spiral that ultimately resulted in the chapter 11 filing.

8. FW intends to utilize the chapter 11 process to (a) maximize and preserve the value of its assets; (b) liquidate and/or reorganize its business, or some combination thereof; and (c) pursue litigation against CIU, Li and others to enjoin their breach of non-compete agreements and patent infringement, recover damages and object to claims.

9. Bankruptcy protection will enable FW to maximize the value of its assets, either as a going concern in whole or in part, or through an orderly liquidation by allowing FW to maintain customer and other business relationships, provide a platform for a competitive sale process, and provide a path for recovery from the predatory actions of CIU, Li and his affiliates.

## SCOPE OF ENGAGEMENT AND PROPOSED COMPENSATION TERMS

10. Pursuant to 11 U.S.C. § 327(e), FW believes that the employment of the TPH Firm as special counsel for FW in connection with any litigation involving ZL, CIU, and Li is in the best interests of the estate. FW has selected the TPH Firm by reason of its expertise and experience in commercial litigation and intellectual property disputes as well as its prior experience working with FW, and believes that said attorneys are well qualified to represent FW in any litigation relating to the circumstances described above. The TPH Firm is available to assist in representing FW in connection with any litigation FW deems advisable.

11. Prior to the Petition Date, TPH Firm represented Banjo and FW in the Arbitration. As of the Petition Date, any fees owed by FW to TPH Firm were paid in full. TPH Firm will continue to represent Banjo. TPH Firm will also continue to represent FW as co-counsel with Wadsworth Garber Warner Conrardy, P.C. in all litigation matters involving ZL, CIU, and Li. As recognized by this Court,

> There is an obvious danger to a firm which represents numerous entities which may participate to some extent or another in a bankruptcy case. The key analysis, however, is whether the past (or present) representation creates a conflict to the duty of loyalty the applicant firm owes to the debtor in the bankruptcy case in which it seeks retention.

*In re 7677 E. Berry Ave. Assocs., L.P.*, 419 B.R. 833, 848 (Bankr. D. Colo. 2009). TPH Firm does not anticipate that simultaneous representation of FW and Banjo will present a conflict of interest as the interests of TPH Firm and FW are substantially aligned with respect to the anticipated litigation. TPH Firm has disclosed to FW and Banjo that if a conflict of interest does arise between the FW and Banjo in any matter in which TPH Firm represents both, TPH Firm may withdraw from representation of either or both clients. To the extent TPH Firm continues represent both FW and Banjo in the future, its fees will be allocated fairly and accurately between FW and Banjo. TPH Firm will not participate in any matter in which FW or Banjo may be adverse to one another. Moreover, there are not potential claims by FW's estate against Banjo for mismanagement and due to the nature of the claims at issue, there will be no appearance of impropriety by allowing TPH Firm to continue representing both FW and Banjo in any litigation. Indeed, simultaneous representation is actually beneficial to, and in the best interest of, FW's estate.

12. Section 327(e) of the Bankruptcy Code provides that FW, "with the court's approval, may employ, for a specified special purpose, other than to represent the [debtor] in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e). "The key difference between employment under section 327(a) and employment under section 327(e) is that the conflict of interest standard in section 327(e) is more relaxed than the standard embodied in section 327(a)." *In re J.S. II, L.L.C.*, 371 B.R. 311, 317 (Bankr. N.D. Ill. 2007).

13. An attorney may be employed as special counsel under 11 U.S.C. 327(e) where

> 1) the proposed special counsel must have represented the debtor previously; 2) the proposed special counsel must be employed by the trustee only for a limited, special purpose; 3) the proposed representation must be in the best interest of the estate; and 4) there must be no conflict with the debtor or the estate arising from the matter(s) for which the trustee seeks to engage special counsel.

*In re Potter*, No. 7-05-14071MA, 2009 WL 2922850, at *1 (Bankr. D.N.M. June 12, 2009). Additionally, special counsel must not "represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. 327(e).

14. As stated in the Affidavit of Thomas P. Howard attached hereto, the four-part test listed above is satisfied. First, the TPH Firm represented FW previously. Second, the TPH Firm is being employed only for a limited, special purpose; namely, to represent FW in any litigation described above. Third, the proposed representation is in the best interest of the estate. Fourth, there is no conflict between FW, Banjo, the TPH Firm, or the estate arising from the matters for which FW seeks to engage TPH Firm. Although the TPH Firm has previously represented Banjo and FW and seeks to continue to represent both Banjo and FW, the TPH Firm's employment should be approved. *See e.g. In re Nat'l Century Fin. Enterprises, Inc.*, 298 B.R. 124, 132 (Bankr. S.D. Ohio 2003) (the mere potential for conflict does not warrant the disqualification of special counsel). Thus, employment of TPH Firm as counsel for FW in connection with the Arbitration, and any matters related thereto, is proper pursuant to 11 U.S.C. § 327(e).

15. Thomas P. Howard is the individual most likely to perform services on behalf of FW. Mr. Howard's professional rate is $335.00 per hour. Other attorneys at TPH Firm who may perform services on behalf of FW bill at the rates of $315.00 per hour. Legal assistance provided by paralegals and law clerks will be at the rate of $150.00 per hour. Mr. Howard's qualifications are set forth on **Exhibit 1**, attached hereto and incorporated herein by this reference.

16. The TPH Firm has not made any agreement or reached any understanding with any other person for a division of any compensation which may be awarded herein, except as such compensation will be shared or otherwise distributed among the employees and owners of TPH Firm.

17. Prior to the Petition Date, FW deposited $300,000.00 with TPH Firm. As of the Petition Date, TPH Firm was paid $85,212.42, leaving a retainer of $214,787.58. The TPH Firm asserts a security interest in the retainer. In the event the case is converted to a Chapter 7 proceeding, the security interest in the retainer may enable TPH Firm to receive payment of its fees and expenses to the extent of the retainer while other administrative expenses remain unpaid.

18. The TPH Firm shall (a) be subject to any procedures set forth in any orders establishing interim compensation procedures for professionals, and (b) make application to the Court under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure for approval of its fees and expenses from FW.

19. FW requests that the employment of the TPH Firm be approved as of the Petition Date.

**WHEREFORE,** FW respectfully requests that this Court enter an Order (1) authorizing FW to employ the TPH Firm as counsel for FW pursuant to 11 U.S.C. 327(e), to represent FW in all litigation matters described above as of the Petition Date, (2) approving the retainer in the amount of $213,484.08, and (3) for such other and further relief as the Court deems appropriate.

Dated this 2nd day of October, 2019.

                                         WADSWORTH GARBER WARNER CONRARDY, P.C.

                                         */s/ David J. Warner*
                                         David V. Wadsworth, #32066
                                         David J. Warner, #38708
                                         Aaron J. Conrardy, #40030
                                         2580 W. Main St., Ste. 200
                                         Littleton, Colorado 80120
                                         (303) 296-1999; (303) 296-7600 (fax)
                                         dwadsworth@wgwc-law.com
                                         dwarner@wgwc-law.com
                                         aconrardy@wgwc-law.com
                                         Attorneys for the Debtor-in-Possession