# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | Case No. 19-18459 MER |
| FRICTIONLESS WORLD, LLC, ) | Chapter 11 |
| ) | |
| Debtor. ) | |

_____

**MOTION OF DEBTOR IN POSSESSION FOR ENTRY OF AN ORDER
(A) APPROVING BIDDING AND AUCTION PROCEDURES FOR THE SALE OF
DEBTOR'S ASSETS, (B) SCHEDULING AN AUCTION, SALE HEARING, AND
OTHER DATES AND DEADLINES, (C) AUTHORIZING THE DEBTOR TO
DESIGNATE A STALKING HORSE PURCHASER AND GRANT STALKING HORSE
PROTECTIONS, AND (D) APPROVING THE SALE OF ASSETS FREE AND CLEAR
OF LIENS, CLAIMS AND ENCUMBRANCES**

_____

Debtor-in-Possession Frictionless World, LLC (the "Debtor") hereby file this *Motion for Entry of an Order (A) Approving Bidding and Auction Procedures for the Sale of Debtor's Assets, (B) Scheduling an Auction, Sale Hearing, and Other Dates and Deadlines, (C) Authorizing the Debtor to Designate a Stalking Horse Purchaser and Grant Stalking Horse Protections, and (D) Approving the Sale of Assets Free and Clear of Liens, Claims, and Encumbrances* (this "Motion"). In support of this Motion, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

The Debtor commenced a comprehensive process to identify and evaluate all available restructuring and sale transaction alternatives. Since commencing this process, Three Twenty-One Capital Partners, LLC ("3-21"), the Debtor's investment banker, has contacted and distributed teaser materials to a large group of financial and strategic parties to solicit asset acquisition proposals. Over 1,300 prospective purchasers and other transaction counterparties

were contacted through 3-21's marketing campaign (the "Transaction Parties"). Sixty-seven of the Transaction Parties executed a confidentiality agreement and had access to Debtor's data room and site visits upon request. Five parties submitted proposals. Each proposal contemplated a section 363 sale transaction of a portion of the Debtor's assets. No proposals have been received for a plan-based transaction.

The Debtor evaluated each proposal received and, after consulting with 3-21, and the Debtor's other retained professionals, determined that the best way to maximize value is to pursue a sale of Debtor's assets pursuant to section 363 of the Bankruptcy Code, followed by a plan of reorganization through which (i) sale proceeds, if any, would be distributed, (ii) remaining assets and causes of action, if any, would be addressed and pursued, (iii) proofs of claim would be reconciled and objections resolved, and (iv) the case will otherwise be wound up.

The Debtor and 3-21 have continued engaging and negotiating with multiple parties regarding their respective offers, including as to whether any would be willing to serve as a stalking horse purchaser on terms acceptable to the Debtor. During this period, existing bids were refined and Debtor accepted a stalking horse bidder offer to purchase certain Assets (as defined below) for the initial bid of $800,000. The Debtor believes numerous parties remain interested in acquiring assets.

Through this Motion, Debtor seeks (i) the entry of a bid procedures order (the "Bid Procedures Order"), substantially in the form attached hereto as **Exhibit A**, that will establish bid procedures and otherwise formalize and govern the remainder of the sale process, (ii) designation of a stalking horse bidder and granting certain stalking horse protections, and (iii) the entry of a sale order (the "Sale Order"), substantially in the form attached hereto as **Exhibit B**, following an auction and sale hearing, that will approve the sale or sales selected by the Debtor as the

2

highest and best bids for the Debtor's assets free and clear of liens, claims, and encumbrances.

For these reasons, and those set forth below, the Debtor respectfully submits that the relief requested in this Motion is justified, will maximize value and will otherwise benefit the Debtor's estates and creditors, and should be approved.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over is case under 28 U.S.C. § 1334.

2. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Venue of this case and related proceedings is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4. On September 30, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is continuing in possession of its property and is operating and managing its business and affairs as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. On December 2, 2019, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

6. Debtor was formed in 2012 to manufacture and distribute patented professional-grade outdoor equipment for agricultural, household, and recreational use. FW's brands include Dirty Hand Tools, RanchEx, Redback, Trophy Strike, and Vinsetta Tools. FW owns the patents for its products and its products were historically sold by major retailers such as Home Depot, Lowes, Menards, Mid-States and Tractor Supply Co.

7. The statutory predicates for the relief sought in this Motion are sections 105 and 363 of the Bankruptcy Code, Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1 and 6004-1 of the Local Bankruptcy Rules.

**The Assets to be Sold**

8. Other than cash on deposit, Debtor's assets consist of manufactured goods held for sale, office furniture and equipment, vehicles and trailers, machinery, equipment and fixtures used in operations such as tooling, patents, accounts receivables, and other assets more specifically identified on Debtor's Schedule A/B (collectively, the "Assets"). Revenue generated during the postpetition period has primarily come from selling manufactured goods inventory.

9. Debtor has received a proposed purchase of a substantial portion of the Assets to be effectuated through a stalking horse auction process. The proposed purchase consists of manufactured goods held for sale and related parts and accessories, tooling, and office furniture and equipment that are specifically identified in the proposed Asset Purchase Agreement (the "APA") attached hereto as **Exhibit C**. It is contemplated that through the auction process, assets in addition to those identified in the APA may be purchased by one or more successful bidders.

**Sale Efforts**

10. Since the Petition Date, the Debtor's retained professionals have worked diligently to sell Debtor's assets. As a result of these efforts and the expanded marketing process, the Debtor received five proposals from various liquidators and strategic buyerseach of which will be pursued further through the sale, bidding, and auction process requested through this Motion.

11.     The Assets have already been heavily marketed and potential Transaction Parties have had ample opportunity to conduct due diligence, were given access to senior management, and had the ability to conduct site visits.  At this stage, the likely Transaction Parties are known and have already been engaged with Debtor and their advisors with respect to potential deal terms.  The Debtor need only formalize the remainder of the process to maximize value through the auction process proposed herein.

## RELIEF REQUESTED

12.     The Debtor respectfully requests that the Court enter the Bid Procedures Order, substantially in the form attached hereto, granting, among other things, the following relief:

- Approving the bid procedures attached hereto as **Exhibit D** (the "Bid Procedures");

- Approving the form Asset Purchase Agreement to be used by interested Transaction Parties for purposes of submitting qualified bids pursuant to the Bid Procedures.  The form Asset Purchase Agreement will be subject to redlines by successful bidders to remove stalking horse protections for non-stalking horse bidders, address use of premises, and assignment and assumption of the lease for the premises if that is consideration for a successful bid[1];

- Authorizing, but not directing, the Debtor to continue the existing sale process led by 3-21 and to solicit final bids for the sale of the Assets or any portion thereof in accordance with the Bid Procedures;

- Designating PPL Acquisition Group X, LLC and Great American Global Partners, LLC (the "Stalking Horse") as the stalking horse bidder for the Assets and to grant certain stalking horse protections to the Stalking Horse;

- Approving the auction procedures described below (the "Auction Procedures");

- Scheduling an auction (if necessary) and final sale hearing; and

---

[1] Should a successful bidder request assignment and assumption of Debtor's leased premises, Debtor shall forthwith file a motion under § 365(a) to assume and assign such lease.

5

- Approving the form and manner of notice of the entry of the Bid Procedures Order, the scheduling of the auction and final sale hearing, and the proposed asset sale.

13. The Debtor further requests that, following the completion of any auction and the final sale hearing, the Court enter the Sale Order, substantially in the form attached hereto (which form may be modified and filed with the Court prior to the date of the final sale hearing), that, among other things, (i) approves the sale of the Debtor's Assets or any portion thereof to the bidder or bidders whose bids are selected by the Debtor as the highest and best offer for such Assets free and clear of liens, claims, encumbrances and other interests pursuant to sections 363(b) and (f) of the Bankruptcy Code.

## The Bid Procedures

14. The proposed Bid Procedures are designed to, among other things, (i) solicit final, binding bids from the Transaction Parties, (ii) enable the Debtor to evaluate the bids received in a fair and efficient manner, (iii) facilitate competitive bidding in the event that more than one qualified bid is submitted for the same Asset or group of Assets, (iv) provide for consultation rights for the Committee, and (v) otherwise conduct the remainder of the sale process in a fair, efficient, and transparent manner with the ultimate goal of maximizing value for all stakeholders.

15. Among other things, the Bid Procedures:

- Define the assets to be sold and authorize the Debtor and 3-21 to continue the sale process previously commenced by 3-21, including by distributing additional marketing materials and engaging with all prospective Transaction Parties;

- Provide guidelines for the consideration of bids received, including consultation rights for the Committee;

- Establish the deadline by which final bids must be received and other key dates and deadlines;

6

- Establish the requirements for a bid to constitute a "Qualified Bid";

- Provide for the payment of a 10% good faith deposit;

- Designate the Stalking Horse and identify the stalking horse protections consistent with those described below;

- Provide for the conduct of an auction and the selection of the Successful Bidder(s);

- Provide for damages in the event a Successful Bidder fails to consummate the transaction contemplated by its bid; and

- Provides for other various other matters in respect of the sale process.

## Stalking Horse Designation and Protections

16. The Debtor has designated the Stalking Horse as the stalking horse to ensure a minimum bid and enhance competitive bidding.

17. In order to induce a prospective purchaser to become a stalking horse purchaser, the Debtor requests that it be permitted to grant any or all of the following customary stalking horse protections (the "Stalking Horse Protections"):

   a. Breakup Fee. The Debtor will pay a breakup fee of $50,000 (the "Breakup Fee").

   b. Bidding Increments. In the event a qualified bid other than the Stalking Horse bid is received for the Assets or any portion thereof and an auction is held, the first overbid must be at least $900,000, which is the Stalking Horse's $800,000 initial bid, plus $50,000 overbid protection, plus the Breakup Fee. All subsequent bids must be in an amount not less than the $25,000 minimum bid increment.

## Auction Procedures

18. If more than one qualified bid is received for any of the Assets, and the Debtor determines that an auction is necessary or appropriate, it will conduct the auction in consultation with its professionals and advisors, and the Committee, in a manner determined by the Debtor to

be the most efficient and the best way to maximize value through competitive bidding. The Debtor reserves the right to impose any procedures with respect to the governance and conduct of the Auction as it deems necessary or appropriate. The Debtor will advise all participants of the initial auction procedures before the auction commences. However, the Debtor, in consultation with its professionals and advisors, and the Committee, may supplement, modify, or amend the procedures in any way and at any time before or during the auction to the extent they deem necessary or appropriate.

19. Only the Debtor, its professionals and advisors, the Committee and its counsel and advisors, Qualified Bidders and their counsel, and any other party who obtains the prior consent of the Debtor (which the Debtor may withhold for any reason) will be permitted to attend the Auction. The Debtor reserves the right to permit or deny access to the Auction to the extent necessary or appropriate in the discretion of the Debtor.

20. Consistent with its fiduciary duties, the Debtor reserves the right not to proceed with the section 363 sale process contemplated by this Motion in the event it believes (in consultation with the Committee) that a plan or other transaction would better maximize the value of the estate.

## BASIS FOR RELIEF

A. General Standard

21. The Debtor has the power, after notice and a hearing, to sell property of the estate outside of the ordinary course of business. 11 U.S.C. § 363(b). In determining whether to approve such a request, bankruptcy courts generally apply the "business judgment rule." *See, e.g., In re Castre, Inc.*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004); *In re Psychrometric Sys.*, 367 B.R. 670, 674 (Bankr. D. Colo. 2007). In particular, a sale outside of the ordinary course of

business should be approved if: (i) a sound business reason exists to sell the property; (ii) adequate and reasonable notice of the terms has been given to parties in interest; (iii) the proposed sale price is fair and reasonable; and (iv) the buyer has acted in good faith. *In re Caster, Inc.*, 312 B.R. at 428; *In re JL Building, LLC*, 425 B.R. 854, 859 (Bankr. D. Utah 2011).

22. In reviewing proposed transactions outside the ordinary course under section 363(b), bankruptcy courts should give great judicial deference to the debtor's business judgment. *See, e.g., Psychrometric Sys.*, 367 B.R. at 674; *Esposito v. Title Ins. Co. of Pa. (In re Fernwood Mkts.),* 73 B.R. 616, 621 n.2 (Bankr. E.D. Pa. 1987). However, "the court must always scrutinize whether the trustee has fulfilled his duty to maximize the value obtained from a sale, particularly in liquidation cases." *Psychrometric Sys.*, 367 B.R. at 674 (internal quotations and citations omitted).

B. Approval of Bid Procedures

23. A debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate. *See, e.g., In re Castre, Inc.*, 312 B.R. at 430; *In re Integrated Resources, Inc.,* 147 B.R. 650, 656-57 (Bankr. S.D.N.Y. 1992) (noting that bid procedures negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard; *In re 995 Fifth Ave. Assocs., L.P.,* 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same); *In re Twenver, Inc.* 149 B.R. 954, 956 (Bankr. D. Colo. 1992) (adopting and applying *Integrated Resources* in the context of approval of breakup fees). Indeed, the court in the *Castre* case explained:

> A trustee or DIP is responsible for administering the bankruptcy estate and his, her or management's judgment on the sale of estate assets and the procedure for sale is entitled to respect and deference from the Court, as long as the burden of giving sound business reasons is met.

*Castre*, 312 B.R. at 430.

24. Further, in a sale of property of the estate, the Debtor's primary goal is to maximize the proceeds received by the estate. *See, e.g., Integrated Resources,* 147 B.R. at 659 ("'It is a well-established principle of bankruptcy law that the . . . [Debtor'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.'" (internal citation omitted)) (*quoting In re Atlanta Packaging Products, Inc.,* 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)). Further, a debtor maximizes value for creditors by selecting the 'highest and best bid, and thereby protecting the interests of [the] debtor, its creditors, and its equity holders.'" *In re GSC, Inc., et al.,* 453 B.R. 132, 169-170 (Bankr. S.D.N.Y. 2011) (quoting *In re Fin. News Networks, Inc.*, 126 B.R. 152, 157 (S.D.N.Y. 1991).

25. As a result, courts routinely recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., Integrated Resources,* 147 B.R. at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets").

26. The Debtor believes that the proposed Bid Procedures will promote active bidding from the most interested parties and accordingly, will elicit the best and highest offers available for the sale of the Debtor's assets. The proposed Bid Procedures will allow the Debtor to conduct the sale in a controlled, transparent and fair fashion that will encourage meaningful input from key constituents and participation by financially capable bidders who will offer the best package for the assets and who can demonstrate the ability to close a transaction. The Debtor submits that the Bid Procedures are consistent with other procedures previously approved in this

District and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings.

C.     The Stalking Horse Designation Procedures and Protections Should be Approved.

27.    The Debtor also seeks authority to designate the Stalking Horse as a stalking horse purchaser and to offer customary bid protections, including a break-up fee and bidding increments to compensate it for the risk, due diligence and expense associated with acting as a stalking horse.

28.    The use of a stalking horse in a public auction process for sales pursuant to section 363 of the Bankruptcy Code is a customary practice in chapter 11 cases, because the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by locking in a purchase price "floor" and helping to garner interest in the assets. As a result, stalking horse bidders virtually always require breakup fees and other forms of bidding protections as an inducement for holding their purchase offer open while it is exposed to overbids in an auction process.

29.    With respect to breakup fees in bankruptcy cases, courts have generally considered three factors when assessing proposals for such fees: (a) whether the relationship of the parties who negotiated the breakup fee is tainted by self-dealing or manipulation; (b) whether the fee hampers, rather than encourages, bidding; and (c) whether the amount of the fee is unreasonable relative to the proposed purchase price. *See In re Integrated Res., Inc.*, 147 B.R. at 657. With respect to the last factor, Courts have established a range of appropriate breakup fees. Ten percent is generally considered too high and two to three percent is generally found to be reasonable. *See e.g., In re Twenver, Inc.*, 149 B.R. 954, 957 (Bankr. D. Colo. 1992) (rejecting 10% breakup fee and noting that breakup fees in the 1% to 2% range are generally found to be

11

reasonable); *In re HMX Acquisition Corp.*, No. 12-14300 (ALG) (Bankr S.D.N.Y. Nov. 29, 2012) (approving a breakup fee of approximately 3% of the purchase price); *In re The Great Atlantic & Pacific Tea Company, Inc.,* No. 10-24549 (RDD) (Bankr. S.D.N.Y. May 2, 2011) (approving a breakup fee of 2.5% of the purchase price); *In re BearingPoint, Inc.*, No. 09-10691 (REG) (Bankr. S.D.N.Y. Apr. 7, 2009) (approving a breakup fee of approximately 3% of the purchase price); *In re Silicon Graphics, Inc.*, No. 09- 11701 (MG) (Bankr. S.D.N.Y. Apr. 3, 2009) (approving breakup fee of approximately 2.8% of the purchase price); *In re Steve & Barry's Manhattan LLC,* No. 08-12579 (ALG) (Bankr. S.D.N.Y. Aug. 5, 2008) (approving breakup fee of 2% of the purchase price).

30. The Breakup Fee is appropriate and reasonable. The Breakup Fee was reached through arms-length negotiations and is an appropriate percentage of the initial bid. The Breakup Fee is 6.25% of the Stalking Horse's $800,000 bid. Considering the scale of the sale and that the Breakup Fee does not include reimbursement of expenses and attorneys' fees, the Breakup Fee is an appropriate amount and will not discourage bidding. The Debtor believes that the Stalking Horse Protections will benefit the overall sale process, as a stalking horse bid will establish a floor for further bidding and potentially increase the value of the Assets for the benefit of the estate.

31. For these reasons, designating the Breakup Fee and Stalking Horse Protections are reasonable, appropriate, and within the Debtor's sound business judgment under the circumstances, will benefit the overall sale process, and should be approved.

D. <u>Sales Free and Clear of Liens, Claims, and Other Interests</u>

32. Pursuant to section 363(f) of the Bankruptcy Code, the Court may authorize the sale of assets free and clear of existing liens, claims and encumbrances, if any, if:

(a) applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

(b) the entity holding the lien, claim or encumbrance consents to the proposed sale;

(c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d) such interest is in bona fide dispute; or

(e) such entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of such interest.

33. The Assets are not subject to liens, claims or encumbrances. The Court may therefore authorize the sale free and clear of existing liens, claims and encumbrances pursuant to § 363(f)(1).

E. <u>The Proposed Sale Meets the Business Judgment Test and Should be Approved</u>

34. The Debtor has determined, in an exercise of its business judgment, that the proposed sale of the Assets to the Successful Bidder(s) following the conclusion of the sale process will maximize value and benefit their estates and creditors.

35. Debtor, through its investment banker 3-21, has engaged in a fulsome marketing process resulting in the identification of several prospective bidders. As a result of this process, Debtor believes that the offers that will be generated and in-hand following the conclusion of the Auction will be the highest and best available for the Assets under the circumstances. The sale process is designed to maximize value and market the Assets in a full, fair, and transparent manner.

36. For these reasons, the Debtor respectfully submits that the proposed sale is in the best interest of the Debtor's estate and creditors, will maximize value, and should be approved.

F. <u>Approval of Form and Manner of Notice</u>

37. Concurrently with the filing of this Motion, the Debtor will serve notice of this Motion and its requested dates for sale objections and the Sale Hearing. Within two (2) days of the entry of the Bid Procedures Order, the Debtor proposes to send a further notice (the "<u>Sale Notice</u>"), substantially in the form attached hereto as **Exhibit E**, to the United States Trustee, the Committee, all creditors listed in the Debtor's creditor matrix, and all parties who have appeared in this case, that will, among other things, advise of the entry of the Bid Procedures Order and approval of the Bid Procedures, summarize key dates and deadlines, and otherwise provide such parties with notice of the sale process and opportunity to object.

38. The Debtor respectfully submits that service of notice of this Motion and service of the Sale Notice in the manner described above will provide adequate notice and due process to all parties in interest with respect to the sale process and the proposed sale of the Assets free and clear of liens, claims, encumbrances, and other interests.

G. <u>Scheduling of Auction and Sale Hearing</u>

39. The Debtor respectfully requests that the Court schedule an auction for February 21, 2020. The Debtor further requests that they it given the authority to cancel, continue or adjourn the auction in its discretion (in consultation with the Committee), including, without limitation, in the event that sufficient qualified bids have not been received. The Debtor further request that the Court schedule a sale hearing for February 20, 2020 at 1:30 p.m.

H.      Compliance with L.B.R. 6004-1

40.      The within Motion complies with the provisions of L.B.R. 6004-1. The relevant provisions of which are addressed as follows:

    a.      L.B.R. 6004-1(d)(A): purchaser will have access to 2-3 warehouse personnel and 1 salesperson from Debtor for 4-6 weeks following the sale at purchaser's expense;

    b.      L.B.R. 6004-1(d)(C): the sale is subject to an auction as set forth above;

    c.      L.B.R. 600f-1(d)(D): the transaction must close by no later than March 20, 2020 provided, however, that Debtor may waive such requirement;

    d.      L.B.R. 6004-1(d)(E): good faith deposit of 10% of the purchase price is required;

    e.      L.B.R. 6004-1(d)(F): purchaser may continue to use Debtor's premises at 1100 West 120th Avenue, Westminster, Colorado for 10 weeks following closing at Debtor's expense; and

    f.      L.B.R. 6004-1(d)(N): Debtor seeks relief from the fourteen-day stay imposed by Fed.R.Bankr.P. 6004(h).

I.      Waiver of 14-Day Stay

41.      To facilitate the consummation of the proposed sale as soon as practicable after entry of the Sale Order, the Debtor respectfully requests that the Court suspend the operation of the 14-day stay under Fed. R. Bankr. P. 6004(h).

WHEREFORE, the Debtor respectfully requests that the Court (i) enter the Bid Procedures Order, substantially in the form attached hereto, granting the procedural relief requested herein, (ii) after the conclusion of the auction and final sale hearing, enter the Sale Order (iii) approving the sale free and clear of liens, claims, encumbrances, and interests, and (iv) grant such other relief as the Court deems just and proper.

DATED this 16th day of January, 2020.

    Respectfully submitted,

    WADSWORTH GARBER WARNER CONRARDY, P.C.

    */s/ Aaron J. Conrardy*
    David V. Wadsworth, #32066
    David J. Warner, #38708
    Aaron J. Conrardy, #40030
    2580 West Main Street, Suite 200
    Littleton, Colorado 80120
    303-296-1999 / 303-296-7600 FAX
    dwadsworth@wgwc-law.com
    dwarner@wgwc-law.com
    aconrardy@wgwc-law.com
    Attorneys for Frictionless World, LLC